<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**FILED**
JAMES J. WALDRON, CLERK

October 30, 2006

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: <u>/s/Diana Reaves,</u> Deputy

|  |  |
|---|---|
| In Re: : | |
| : | Case No.: 03-49338 (NLW) |
| M Liquidating Corporation, : | |
| S Liquidating Corporation, and : | Chapter 7. |
| Action Wholesale Services, Inc., : | |
| : | |
| Debtors. : | |
| : | |
| Charles M. Forman, Trustee, : | |
| : | |
| Plaintiff, : | Adv. Proc. No.: 05-2156 |
| : | |
| v. : | |
| : | |
| President Industrial Products, : | **OPINION** |
| : | |
| Defendant. : | |

**Before:    HON. NOVALYN L. WINFIELD**

<u>**A P P E A R A N C E S:**</u>

Kim Lynch, Esq.
Forman Holt & Eliades LLC
218 Route 17 North
Rochelle Park, NJ 07662
Attorneys for Charles M. Forman, Chapter 7 Trustee

Robert K. Malone, Esq.
Michael J. Reynolds, Esq.
Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, NJ 07932
Attorneys for President Industrial Products

This matter came before the Court on the Chapter 7 Trustee's motion to amend his preference complaint to add a count for recovery of an alleged post-petition preferential transfer. The defendant opposed the motion to amend, and further moved to dismiss the complaint for failure to state a claim on which relief can be granted. As set forth below, the Court has permitted the Trustee to amend his complaint, and now denies defendant's motion to dismiss.

This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §1334 and §157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(F). The following shall constitute the findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The instant adversary proceeding is a product of three involuntary Chapter 7 petitions filed by Albion Alliance Mezzanine Fund, L.P. and Albion Alliance Mezzanine Fund II, L.P. (Together "Albion"). On December 5, 2003 Albion filed involuntary petitions against M Liquidating Corp. ("M Liquidating"), S Liquidating Corp. ("S Liquidating") and Action Wholesale Service, Inc. ("Action") (collectively, "Debtors"). Orders for relief were entered on January 13, 2004, and Charles M. Forman ("Trustee") was appointed as trustee for all three debtors. An order directing the joint administration of the cases was entered by the court on February 28, 2004.

A bit of pre-petition history is essential for an understanding of the motions presently before the

2

Court. On September 19, 2003, ESS Holdings Corp. ("ESS"), EMCO Sales & Services, Inc. ("EMCO") and Action Wholesale Services, Inc. ("Action") entered into an Asset Purchase Agreement ("APA") with ActionEmco Holdings, LLC ("ActionEmco"). Under the APA the aggregate consideration paid at closing was cash equal to $23,100,000, subject to certain adjustments specified in § 3.3 of the APA and the assumption of Assumed Liabilities as defined in APA § 2.3. (APA, § 3.1). Among the Assumed Liabilities were the debts ESS, EMCO and Action owed to their trade vendors. It appears that following the closing, ActionEmco paid the trade debt owed by ESS, EMCO and Action.[1]

Following entry of the Order for Relief and his appointment, the Trustee filed approximately two hundred adversary proceedings against the Debtors' trade vendors to recover, as preferential transfers under 11 U.S.C. § 547(b), the payments made by ActionEmco after it acquired the Debtors' assets and assumed the liabilities, including the trade debt. The Trustee's preference actions were premised on his contention that the payments by ActionEmco to the trade vendors were part of the consideration given to the Debtors under the terms of the APA, and thus constitute transfers of property of the Debtors under § 547. (Trustee's Original Complaint at ¶¶ 38-48). As in the other adversary proceedings, the Trustee alleges that the transfer to President Industrial Products ("President") can be avoided as a preference because ActionEmco made the payments to President on account of an antecedent debt incurred by one or more of the Debtors that was subsequently assumed by ActionEmco as part of the APA. (Id.) Both parties are also in agreement that the pre-petition payment was made within ninety (90) days. See 11 U.S.C. § 547(c).

---

[1] Further, at some point after the closing, ESS because known as S Liquidating Corp. and EMCO became know as M Liquidating Corp.

In its answer President denied the Trustee's allegations and asserted statutory defenses pursuant to § 547(c) of the Bankruptcy Code - an ordinary course of business exception (§ 547(c)(2)), and a new value exception (§ 547(c)(1)), as well as the common law defense of "earmarking." President also claimed that the complaint failed to state a claim on which relief could be granted.

Subsequently, the Trustee moved to amend his complaint for recovery of a post-petition transfer in the amount of $891.00. President objected to the Trustee's motion and moved to dismiss the complaint. At the hearing the Court granted the Trustee's motion to amend his complaint, adjourned President's motion to dismiss to afford the Trustee an adequate opportunity to respond to President's cross-motion to dismiss, which is premised on its contention that the complaint fails to state a claim on which relief can be granted, and that the Trustee cannot demonstrate that President was an initial transferee under 11 U.S.C. 550(a)(1).[2]

## DISCUSSION

*I. Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a motion to dismiss a

---

[2] President opposes the relief sought by the Trustee on other grounds as well. Following a status hearing with the Trustee and various adversary proceeding defendants, the Court issued a Global Scheduling Order dated August 29, 2005. Pursuant to that Order the Trustee filed a Summary Judgment motion for a determination that the payments made by ActionEmco to the trade vendors were preferential transfers, and that the defendants were precluded from raising the affirmative defenses set forth in 11 U.S.C. § 547(c). President joined with other defendants in opposing the Trustee's motion. However, President reserved its right to bring other dispositive motions. Because the issue of whether the trade vendors are initial transferees is a central question in the Trustee's summary judgment motion brought pursuant to the Global Scheduling Order, it will be addressed by the Court in that matter, and not the present motion.

complaint may be filed for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss, the court must accept as true all allegations in the complaint and all reasonable inferences drawn from those allegations, viewing them in light most favorable to the plaintiff. See Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969); Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). Courts, however, need not accept all forms of allegations as true. 5A Wright & Miller, Fed. Prac. & Proc.: Civil 3d § 1357 (1990).. Specifically, courts are not bound by a pleading's legal conclusions or unwarranted inferences. Id. While a court may accept the pleader's description of events, along with any conclusions that be reasonably drawn therefrom, the court will not accept conclusory allegations concerning the legal effect of the events that the plaintiff has set out if these allegations are contradicted by the plaintiff's description of events. Id. Ultimately, a complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 175 (3d Cir. 1988).

From an evidentiary standpoint, a Rule 12(b)(6) motion is very limited in scope. As a general rule, courts are not permitted to consider matters outside of the complaint when ruling on a 12(b)(6) motion. 5A Wright & Miller, Fed. Prac. & Proc.: Civil 3d § 1357 (1990). Nevertheless, courts may consider matters of public record that bear a significant relationship to the complaint, orders or items appearing in the case record, issues that are incorporated by reference or integral to the claim and matters subject to judicial notice. Pryor v. Natl. Collegiate Athletic Assn., 288 F.3d 548, 559-60 (3d Cir. 2002); Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir.1992) (citing 5A Wright & Miller, Fed. Prac. & Proc.: Civil 3d § 1366, at 491 (1990)).

If evidence outside of these limited sources are considered, a motion to dismiss is converted into a motion for summary judgment pursuant to Fed. R. Civ. Proc. 56. Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176 (10th Cir. 1991)(citing In re Amatex Corp., 97 B.R. 220, 223 (Bankr.E.D.Pa.1989), aff'd, 102 B.R. 411 (E.D.Pa.1989), aff'd, 908 F.2d 961 (3d Cir.1990)). However, in such cases, the court "should give the parties notice of the changed status of the motion and thereby provide the parties to the proceedings the opportunity to present to the court all material made pertinent to such motion by Rule 56." Id. (citing Nichols v. U.S., 796 F.2d 361, 364 (10th Cir.1986)).

With its motion, President submitted a certification by its president, Lawrence Grossbard ("Grossbard"), that stated facts not found in the pleadings. (Grossbard Certification). Specifically, Grossbard contends that President did not know about the Debtors' sale of their assets to ActionEmco. (Id. at ¶¶ 4 and 5). Because both the Trustee and President have submitted documents asserting facts outside of the pleadings, this Court infers that the parties believe that they have had a reasonable opportunity to present all materials pertinent to a motion brought under Rule 56. Accordingly, the Court shall treat President's motion as a summary judgment motion.

*II. Rule 56 - Summary Judgment Standard*

The party seeking summary judgment under Fed. R. Civ. P. 56(c) bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once that burden is met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented and judgment entered as a matter of law. Id. Furthermore, the non-moving party "must do more than

6

simply show that there is some metaphysical doubt as to a material fact." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). However, "... where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

*III. Preference*

President bases its motion on two arguments. First, it argues that the Grossbard Certification establishes that the available evidence demonstrates that President was a good faith subsequent transferee under 11 U.S.C. §550(b)(1) and the payment it received from ActionEmco cannot be recovered as a preference. Second, President argues that the transfer of the assumed liabilities from the Debtors to ActionEmco under the APA does not constitute a transfer of property of the Debtor pursuant to 11 U.S.C. § 541, citing to Cage v. Wyo-Ben, Inc., et al (Matter of Ramba, Inc.) 437 F.3d 457 (5th Cir. 2006).[3]

In opposition, the Trustee alleges that ActionEmco is a mere continuation of the Debtors, so that ActionEmco's payment to President was in fact an initial transfer of property of the debtor, which can be recovered. In the alternative, the Trustee argues that President was an entity for whose benefit the transfer was made within the meaning of Code § 550(a)(1), and the Trustee may recover the value of the transfer from President. Finally, the Trustee asserts that even if President is a subsequent transferee, it is not a good faith subsequent transferee because President had knowledge of ActionEmco's acquisition of the

---

[3]The District Court's decision in Ramba was also the subject of extensive briefing and argument in connection with the Trustee's motion brought under the Global Scheduling Order. It is only addressed here because President asserts that there is particular significance to the Fifth Circuit's affirmance.

Debtors' assets. He cites to an October 9, 2003 letter from the CFO of ActionEmco, which also referenced a September 18, 2003 letter to vendors from Centre Partners. He points out that the September 18, 2003 letter informed vendors that Centre Partners had acquired the Debtors' assets. Regarding President's assertion that the Ramba decision by the Fifth Circuit is dispositive, the Trustee contends that Ramba is factually distinguishable from the matter at hand.

All elements of a preference must be established in order for the Trustee to prevail. 11 U.S.C. § 547(g). Harvey v. Orix Credit Alliance, Inc. (In re Lamar Haddox Contractors, Inc.), 40 F. 3d 118, 122 (5th Cir. 1994). President contends that the Trustee's action fails on the first element - "a transfer of an interest of the debtor in property." A debtor has an interest in property if that property would have been part of the debtor's bankruptcy estate had the transfer not occurred. Ramba, 437 F.3d at 459 (citing In re Criswell, 102 F.3d 1411, 1416 (5th Cir.1997)). Essentially, a voidable preference must have depleted the estate. Ramba, at 460 (citing Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc., 837 F.2d 224, 230-31 (5th Cir.1988)).

Section 541 of the Code further defines a bankruptcy estate as:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ⋯ becomes property of the estate ⋯ only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). Thus, there can be no preference when a debtor transfers property in which the debtor has no equitable interest. Ramba, at 460.

In Ramba, the trustee filed numerous proceedings against entities who received transfers from the debtor, including actions against the vendors who provided materials, equipment, and services to Ramba's

8

drilling division. Ramba, at 458. The transfers at issue resulted from the sale of Ramba's drilling division to a subsidiary of Patterson Energy, Inc. ("Patterson") Id. The sale was pursuant to an "Asset Purchase Agreement" between Ramba and Patterson, two months prior to the bankruptcy filing, while Ramba was doing business as Ambar, Inc. Id. Under the transaction Ramba sold all of its drilling division assets. Part of the consideration was Patterson's assumption of some of Ramba's liabilities. Id. 458-59. Those liabilities included debts owed to the trade vendors. Id. at 459.

At or about the time of the sale Citibank was owed $25 million and held liens on all of Ramba's assets, including the assets ultimately sold to Patterson. Id. Citibank's security interests wholly encumbered Ramba's assets, exceeding their fair market value. Id. In connection with the sale to Patterson, Citibank agreed to release its security interests in the assets of the drilling division and to allow some of the purchase price to go toward paying Ramba's debts. Id. As a result, Patterson received the subject assets free and clear of Citibank's liens and paid Citibank $15.6 million in full and final satisfaction of its liens. Id. Patterson then paid the remainder of the consideration, approximately $10 million, to Ramba's creditors, the vendors. Id. After Ramba filed bankruptcy, the trustee brought preference actions to avoid Patterson's payments to the vendors. Id.

While the Court agrees that the Ramba case has relevance to the case at hand, it also finds that the extent of its applicability requires further factual development. The Trustee points out that the secured creditor, Whitehall Business Credit Corporation, certified that the Debtors' obligation to it was $20,830,102.38 as of September 19, 2003. (Trustee's 1/31/06 Supp. Ltr. Brief p.2). Additionally, he notes that the cash component of the initial purchase price for the Debtor's assets was $23,100,000. Id. This did not include the assumed liabilities of approximately $21,000,000. Id. Furthermore, the Debtor's

9

September 13, 2003 actual closing balance sheet stated total current assets of over $37.9 million and total assets of over $49.7 million. Id.  In short, it is not presently apparent that like Ramba, assets of the Debtors were fully encumbered.  Thus, to the extent that President relies on the Ramba Case, its motion is denied.

*IV. Good Faith Defense*

Bankruptcy Code § 550(a) establishes two bases for recovery of a preference:

> the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from– (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

But Bankruptcy Code § 550(b) establishes a defense by its limitation of the avoidance of indirect transfers to parties with knowledge of the avoidability of the transfers:

> [t]he trustee may not recover under section (a)(2) of this section from (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided.

For purposes of its assertion of a defense under § 550(b) President assumes (without conceding) that ActionEmco was the initial transferee of property of the debtor.  For purposes of addressing the §550(b) argument by President the Court similarly assumes, without deciding, that ActionEmco was the initial transferee.

President acknowledges that it received payment from ActionEmco on account of an antecedent debt owed by the Debtors.  It submits however, that it received the payment in good faith and without knowledge of the Debtors' sale of assets to ActionEmco.  President relies on the Grossbard Certification

to establish that it was not aware of any facts that suggested that it was receiving an avoidable transfer. President argues that under the Third Circuit's decision in Wasserman v. Bressman (In re Bressman), 327 F.3d 229 (3d Cir. 2003), it cannot be held to have had knowledge of the avoidability of payments received from ActionEmco.

In Bressman, with regard to the issues of good faith and knowledge, the Third Circuit found

> No one supposes that 'knowledge of voidability' means complete understanding of the facts and receipt of a lawyer's opinion that such transfer is voidable; some lesser standard will do. Accordingly, we believe that a transferee has knowledge if he 'knew facts that would lead a reasonable person to believe that the property transferred was recoverable. In this vein, some facts suggest the underlying presence of other facts. If a transferee possesses knowledge of facts that suggest a transfer may be [voidable], and further inquiry by the transferee would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heels, thereby preventing a finding that he has knowledge. In such a situation, the transferee is held to have knowledge of the voidability of the transfer.
>
> ... But this is not the same as a duty to investigate, to be a monitor for creditors' benefit when nothing known so far suggests that there is a [voidable transfer] in chain. Knowledge is a stronger term than notice. A transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own.

Bressman, 327 F.3d 229, 236-37 (internal citations omitted).

President contends that because Grossbard states that President did not know of the sale of assets in September, 2003 and that it did not know of the involuntary bankruptcy petition in December, 2003, it did not have knowledge of any facts that suggested the payment it received was recoverable. The problem with this contention is that it is directly contradicted by the ActionEmco letter attached to the Trustee's December 15, 2005 Letter Brief. President may ultimately deny that it received such a letter,

and the Court may ultimately determine that the denial is credible. However, at present, it creates a factual issue sufficient to deny summary judgement.

## CONCLUSION

As set forth at greater length above, the Cross-Motion by President is denied.